STATE ex rel. MIDWEST GAS
USER'S ASSOCIATION,
Respondent,

Jackson County Missouri, Intervenor—
Respondent,

Public Counsel, Intervenor—
Respondent,

v.

PUBLIC SERVICE COMMISSION OF
THE STATE OF MISSOURI,
Respondent,

Missouri Gas Energy, Appellant.

No. WD 55331.

Missouri Court of Appeals,
Western District.

May 11, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 29, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Gary W. Duffy, Jefferson City, for Appellant.

Stuart W. Conrad, Kansas City, for Midwest Gas User's Assn.

Jeremiah D. Finnegan, Kansas City, for County of Jackson.

Douglas E. Micheel, Jefferson City, for Public Counsel.

Penny G. Baker, Jefferson City, for Public Service Commission.

Before HANNA P.J, ELLIS and RIEDERER, JJ.

RIEDERER, Judge.

This is an appeal taken by Missouri Gas Energy ("MGE"), a division of Southern Union Company, from a judgment of the Circuit Court of Cole County, Missouri, entered in a writ of review proceeding pursuant to § 386.510.[1] MGE is a "gas corporation" and a "public utility" under § 386.020. It is subject to the regulation of the Missouri Public Service Commission ("Commission"), and the rates MGE charges for natural gas service are set from time to time by the Commission. *See* § 393.140.

Respondents herein are the Midwest Gas Users' Association ("Midwest"), the Commission, the Office of the Public Counsel, the County of Jackson, and others. Midwest is an unincorporated non-profit

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

association consisting of and representing its membership of numerous business concerns and corporations which are substantial users of natural gas at plants in Missouri and elsewhere. The Public Counsel is an attorney, appointed by the director of the department of economic development, vested with the discretion to represent, or refrain from representing, and to protect the interests of the public in any proceeding before or appeal from the Commission. *See* §§ 386.700 and 710.

This appeal involves seven issues raised by MGE. Because we conclude that discussion of MGE's last 6 points would have no precedential value, we will affirm as to those points by summary order pursuant to Rule 84.16(b). We are furnishing the parties a memorandum of the reasons for our decision as to those issues. In this opinion, we address only the issue of whether the trial court had subject matter jurisdiction under § 386.520.2 to enter a stay order and an impoundment order.

### Factual and Procedural Background

On March 1, 1996, MGE filed proposed tariffs with the Commission requesting a rate increase of approximately $34 million dollars. On March 13, 1996, the Commission suspended the proposed tariffs. On May 3, 1996, Midwest, Jackson County, Missouri, the Public Counsel and other parties were granted intervention in the case. Hearings were held October 21 through 31, 1996, and again on December 12, 1996. On January 22, 1997, the Commission issued a Report and Order granting an annual increase in revenue of approximately $7.5 million, which was later amended to $8.847 million. In its Report and Order, the Commission (1) rejected a stipulation and agreement on class cost of service and related revenue shifts, (2) rejected the proposed tariff sheets filed by MGE, and (3) awarded MGE the increase in revenue outlined above. Midwest timely filed an application for Rehearing or Reconsideration, as did MGE. On February 28, 1997, the Commission issued an order denying both applications for Rehearing or Reconsideration. On April 21,

1997, Midwest timely filed its Petition for Writ of Review with the Circuit Court of Cole County. MGE filed a separate timely Petition for Writ of Review. MGE was an intervenor in the Midwest case.

In its petition, MGE claimed it was entitled to an annual increase of more than $8.847 million and that the Commission's decision on certain issues would cause MGE to write off retroactively millions of dollars of income previously booked and therefore should be reversed. The circuit court of Cole County issued a judgment on July 18, 1997. MGE filed its notice of appeal in that case on August 4, 1997.

In the meantime, Midwest, in its separate petition to the circuit court, sought review of (1) the Commission's rejection of a stipulation on rate design issues of class cost of services and related revenue shifts and the Commission's failure to provide cross examination and a hearing thereon; (2) the Commission's decision to spread the authorized increase on an equal percentage basis among the various rate classes; (3) the Commission's failure to address an issue of eliminating certain language on Tariff Sheet 68 involving gas transportation; and (4) the Commission's failure to adopt tariff language regarding disputed bills. The "Stipulation and Agreement" referred to above provided that the parties waived their rights to cross-examine witnesses and to present oral arguments if the Commission accepted the specific terms of the Stipulation and Agreement. However, the Stipulation and Agreement also provided that in the event the Commission did not accept the Stipulation and Agreement, the parties believed it would be appropriate to conduct cross-examination and brief the issues to develop a full record on which the Commission could base its decision. On July 18, 1997, the Commission filed its reply brief in the Midwest case and it made the following acknowledgment:

The Commission acknowledges that it likely committed error when it rejected the Stipulation and Agreement present-

ed by the parties on October 30, 1996, and did not provide a hearing on the issues covered by the Agreement. The Commission acknowledges that remand of the cause on this issue is warranted. The Commission will provide a hearing to the parties on the issues raised by the parties in the Stipulation and Agreement, allow for cross-examination of opposing witnesses, and receive briefs on these issues. The Commission will then adopt a decision after its consideration of the complete record on this issue.

On September 4, 1997, Midwest filed a Motion for Immediate Reversal and Stay in the circuit court of Cole County. A hearing was held, and on November 26, 1997, the circuit court issued its Findings of Fact, Conclusions of Law and Judgment. The court found that the "rates fixed by the Commission without a hearing on an essential part of the rate design issue are unlawful." The court added: "Accordingly this Court has no choice but to reverse the Commission's order as to the rates of MGE and remand the matter to the Commission for further action." The court further concluded:

> The parties are entitled to decisions on the issues that they bring before the Commission. *The result of the Commission's failure to decide issues concerning the complained-of tariff provision is to leave the tariff provision in place in MGE's tariff book without findings or conclusions.* Findings of fact on disputed issues are a legal requirement for the Commission to reach its ultimate determination. Section 386.420.2 RSMo 1994; *Century State Bank v. State Banking Board of Mo.*, 523 S.W.2d 856, 859 (Mo. App.1975); *Glasnapp v. State Banking Board*, 545 S.W.2d 382, 387 (Mo.App. 1976).... The parties are entitled to a decision which indicates the basis of that decision. *By failing or refusing to decide the issue, the Commission permits the tariff to continue, but denies the parties due process and the potential of an appeal or other review as to the basis of the Commission's decision.* (emphasis supplied).

In its order and judgment, the court determined:

> 1. That the Report and Order of the Commission in Case No. GR96–285 of January 22, 1997 and its subsequent orders of January 31, 1997, March 18, 1997 and March 20, 1997 be and they are hereby determined to be *unlawful and unreasonable* and unconstitutional in violation of Relator's rights of due process and in violation of Missouri law *insofar as the rates were approved without a hearing on the rate design issues of class cost of service and revenue shifts as required by law.*
>
> 2. That the Report and Order of the Commission ... and its subsequent orders ... be and they are hereby determined to be unlawful and unreasonable in violation of Missouri *law insofar as the Commission failed to rule on a legitimate and identified issue, i.e., the temporary confiscation* of transportation customers' natural gas, that was properly place before it for ruling. (Emphasis supplied.)

On that same day, the circuit court issued a separate Order Granting Stay. The order was issued to preserve the status quo and rate levels existing for LVS transportation customers (including Midwest) prior to the effective date of the increases authorized by the Commission's January 22, 1997 Report and Order, pending a final ruling on the merits of the Petition for Writ of Review. The circuit court found, "This court has the jurisdiction, power and authority to grant Relators' motion pursuant to Section 386.520 RSMo.1994," citing *State ex. rel. Monsanto Company v. Public Service Commission*, 716 S.W.2d 791 (Mo. banc 1986) as authority. The court further explained in relevant part:

> 4. It is shown by Relator and admitted by Respondent Commission and Intervenor–Respondent Missouri Gas Energy that the portion of the Commission's Report and Order of January 22, 1997 establishing rates in the above case was issued without a hearing on the rate

design issues of class cost of service and revenue shifts. Inasmuch as " 'Rate design' is the method used to determine the rates to be charged to individual classes of customers," *Monsanto, supra* at 791, *there appears at this time, therefore, to be no valid or lawful order establishing the present rates of Missouri Gas Energy.* Section 386.410 RSMo 1994....

5. The said Commission order, unless stayed, will require transportation customers to pay in amounts to MGE that exceed the last, just reasonable and lawful rate levels for such services as were previously established by the Commission. That difference, based on the evidence herein, is found to be 1.87 cents per thousand cubic feet of natural gas transported.

7. Unless stayed by this order of this Court, the continued collection of such excessive amounts will likely continue indefinitely while other appeals relating to the same Commission Order are considered and resolved.

8. Unless stayed by this order of this Court, Relators will be compelled to pay said rates that may be unreasonable and unlawful, and Relators would accordingly suffer great and irreparable damage.

MGE appeals from these orders.

### Standard of Review

■ In reviewing an appeal from a writ of review under § 386.520, this court usually reviews the decision of the Commission, not the judgment of the circuit court. *State ex rel. Office of the Public Counsel v. Public Service Commission of Missouri,* 938 S.W.2d 339, 341 (Mo.App. 1997).[2] However, in this appeal, MGE does not attack the decision of the Commission. Rather, MGE attacks the jurisdiction of the circuit court. Therefore, our standard of review is that governing any

court-tried case, the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32.

### The Circuit Court Has Subject Matter Jurisdiction Under Section 386.520

To Enter Its Order Granting Stay and Its Impoundment Order.

Appellant claims in its first point that § 386.520 does not authorize the impounding of funds when the Public Service Commission has authorized a rate increase. It argues that § 386.520 regarding impoundment of funds ancillary to a statutory writ of review does not apply when the order reviewed involves a rate increase, referring to *State ex rel. Kansas City v. Public Service Commission,* 362 Mo. 786, 244 S.W.2d 110, 114 (1951). Respondent Midwest counters that the language in *Kansas City* relating to § 358.520 is dicta and not controlling. Rather, Respondent argues, the controlling authority is *Monsanto,* 716 S.W.2d at 791. It claims that since *Monsanto* was a rate increase case where funds were impounded, and since the Missouri Supreme Court approved the procedure, it is a clear holding on this issue. Appellant replies by distinguishing *Monsanto,* claiming that the *Kansas City* case holds that impoundment of funds was not authorized in the first place.

At the outset, we note that neither *Kansas* City, 362 Mo. 786, 244 S.W.2d 110, nor *Monsanto,* 716 S.W.2d at 791, provides a clear statement of when § 386.520 applies. *Kansas City* involved neither a stay nor an

---

2. Our review of the Commission's order, under usual circumstances, is limited to a determination of whether the order is lawful and reasonable. *Id.* Questions of reasonableness turn on whether there is competent and substantial evidence upon the whole record to

support them and questions of lawfulness turn on whether the Commission's orders or decisions are statutorily authorized. *Id.* The Commission's decision will be reversed if the action of the Commission was arbitrary, capricious and without reasonable basis. *Id.*

impoundment. Nevertheless, the court observed:

> It is not necessary, however, for us to decide in this case whether paragraph 1 of this section applies to rate *increase* orders as well as to rate *reduction* orders. This, for the obvious reason that the procedure provided for in paragraph 1 of the section was not followed in this case. That is to say, the circuit court did not enter an order staying or suspending the order of the commission after a hearing and after a finding of irreparable damage, nor require a suspending bond as provided in the statute. Likewise, although, as we have said, we think it clear that the provisions of paragraphs 2, 3 and 5, of Sec. 386.520, relating to the impounding of funds and the distribution thereof apply only when rate *reduction* orders are under review and do not apply when rate *increase* orders are under review, nevertheless, the record in this case shows that no impoundment of monies was ordered or accomplished.

*Id.* at 115. Then, as if to subtract what it had added to our collective fund of knowledge on the subject, the court further observed:

> In other words, whatever the power of a circuit court may be as to the impoundment of funds on review of a rate increase order under the provisions of Sec. 386.520, the circuit court in this case did not attempt to exercise any power or authority which may be conferred by that section. Thus, the questions of whether the circuit court could have ordered a stay of the commission's order or could have ordered the impoundment of funds, and whether, if the court had done so, it would have acted in excess of the judicial authority conferred by the statute, are not involved on this appeal and are not before us for decision.

*Id.* We conclude that *Kansas* City, 362 Mo. 786, 244 S.W.2d 110, does not hold that § 386.520 applies only in rate decrease cases.

In *Monsanto*, 716 S.W.2d at 791, Laclede Gas filed rate schedules with the Commission to increase its revenues by $24 million. The Commission suspended the proposed tariffs pending hearings on them. After hearings, the Commission adopted a tariff, and a group of large industrial utility customers opposing the rate design filed a petition for review in circuit court. The circuit court found the rate design unlawful and unreasonable, and it reversed the Commission. *Id.* at 796. The circuit court also stayed the rates applied to the industrials on condition that they pay into the court's registry each month the amount of the difference between the charges under the old rates and under the new rates. *Id.* at 794.

On appeal from the circuit court, the court of appeals reversed and held that no relief could be granted, relying on *Lightfoot v. City of Springfield*, 361 Mo. 659, 236 S.W.2d 348 (Mo.1951). *Id.* at 794. In reversing the decision of the court of appeals, the Missouri Supreme Court said:

> *Lightfoot* does not control the present case because the Industrials did contest the PSC order and they did establish a stay fund. Their money was not unconditionally paid and therefore it did not become the property of Laclede. *Under this interpretation, relief can be granted by virtue of the stay entered and the suspending bond established by the circuit court pursuant to Sec. 386.520.* This relief would be for the amount paid for the rate increase under the GR–83–233 tariffs from the time the tariffs were found unlawful in the circuit court until the new tariffs became effective. Since Laclede was not vested with a property right, Laclede has no right to recoup the difference from other customers.

*Id.* (emphasis supplied).

Respondent points to this language, particularly the emphasized sentence, as a holding that constitutes controlling authority that § 386.520 applies in rate increase cases. This case is much more persuasive than *Kansas City*, 362 Mo. 786, 244 S.W.2d

110. However, the issue was not squarely put to the court whether the stay and impoundment provisions of § 386.520 apply in a rate increase case. We examine that issue here.

Before reviewing the statutory scheme of § 386.520, we note Appellants claim that "the ruling in *Kansas City, supra,* was recently cited with approval by the Missouri Court of Appeals, Western District, in *State ex rel., GTE North v. Missouri Public Service Commission,* 835 S.W.2d 356 (Mo.App.1992)." This court in *GTE North* noted:

> Unquestionably, the orders of the Commission were presumptively valid under the provisions of Sec. 386.270 prior to the ruling of the circuit court. The parties aggrieved by the Commission's decision have the right to protect their interest by applying to the circuit court for a stay of enforcement of the Commission's order pursuant to Sec. 386.520. This section provides the opportunity to stay the Commission's order upon issuance of a stay order by the circuit court and the filing of a bond. It also contains provisions allowing for the payment into the court registry of "such sums as [the utility] may collect from and after the date of entry of this order which it would not have been entitled to collect but for this stay." These funds are subject to refund upon determination on appeal that they were improperly collected. The courts have not previously ruled whether § 386.520.1 is available when the decision of the Commission results in a rate increase. *State ex rel. Kansas City v. Public Service Comm'n,* 362 Mo. 786, 244 S.W.2d 110 (1951). Subsections 2, 3 and 5 of Sec. 386.520, by their nature are available only when the Commission's order results in a rate increase.

*Id.* at 366–67. It is still the case that "the courts have not previously ruled on whether § 386.520.1 is available when the decision of the Commission results in a rate increase." *Id.* Moreover, it is still the case that no court has squarely addressed the issue of whether the rest of § 386.520 applies to rate increase cases. *Kansas City,* 362 Mo. 786, 244 S.W.2d 110, expressly refrained from deciding whether § 386.520.1 applies to rate increase orders. *GTE North,* 835 S.W.2d 356 did not so hold, as that case did not involve a stay or an impoundment. It acknowledged the dicta of *Kansas City,* 362 Mo. 786, 244 S.W.2d 110, but the court in *GTE North* had no reason to examine § 386.520 in detail to determine whether it applies in rate increase cases. We do so now.

In interpreting the language of § 386.520, this court applies the rules of statutory construction. We are first and foremost required to determine the intent of the legislature. *GTE North,* 835 S.W.2d at 367. In determining the intent of the legislature, statutes are interpreted according to the words used in their plain and ordinary meaning. *Id.* The legislature is presumed to have enacted laws serving the welfare of its constituents. *Id.* The intent of the legislature here was to enact a statutory design which promotes the orderly setting of rates and the review of the rates as set. *Id.* With these principles in mind, we examine § 386.520 to determine whether it applies to the rate increase case before us. We hold that it does.

## A. Section 386.520.1

Section 386.520.1 states:

> The pendency of a writ of review shall not of itself stay or suspend the operation of the order or decision of the commission, but during the pendency of such writ, the circuit court in its discretion may stay or suspend, in whole or in part, the operation of the commission's order or decision. No order so staying or suspending an order or decision of the commission shall be made by any circuit court otherwise than on three days' notice and after hearing, and if the order or decision of the commission is suspended the same shall contain a specific finding based upon evidence submitted to the court and identified by reference thereto, that great or irrepa-

rable damage would otherwise result to the petitioner and specifying the nature of the damage. In case the order or decision of the commission is stayed or suspended, the order or judgment of the court shall not become effective until a suspending bond shall first have been executed and filed with, and approved by, the circuit court, payable to the state of Missouri, and sufficient in amount and security to secure the prompt payment, by the party petitioning for the review, of all damages caused by the delay in the enforcement of the order or decision of the commission, and of all money which any person or corporation may be compelled to pay, pending the review proceedings, for transportation, transmission, product, commodity or service in excess of the charges fixed by the order or decision of the commission, in case such order or decision is sustained.

■■■■ Section 386.520.1 provides that the judgment of the trial court staying or suspending the order or decision of the Commission " ... shall not become effective until a suspending bond shall first have been executed and filed with, and approved by, the circuit court, payable to the State of Missouri...." The bond must be " ... sufficient in amount and security to secure the prompt payment, by the party petitioning for review, ..." of two different amounts as follows: (1) "of all damages caused by the delay in the enforcement of the order or decision of the Commission" and (2) "of all monies which any person or corporation may be compelled to pay, pending the review proceedings for transportation, transmission, product, commodity or service in excess of the charges fixed by the order or decision of the Commission...." The bond is to cover those damages or moneys "in case such order or decision is sustained." The second scenario ("all monies which any person ... may be compelled to pay ... in excess of the charges filed ....") clearly contemplates, or encompasses, a rate decrease order. The utility would be the petitioner for review and liable for the bond. By contrast, and just as clearly, the first sce-

nario applies to rate increase orders. "Damages caused by the delay in the enforcement of the order or decision of the Commission" could apply in rate increases: with a rate increase order, the utility could be damaged by a delay in the enforcement of that order, because revenue to which it would be entitled ("in case the order or decision is sustained") is not paid over to it. We conclude, therefore, that the plain and ordinary meaning of the words used in the statute indicate that the legislature intended that Subsection 1 of § 386.520 would apply in both rate increase and rate decrease cases.

This result is foreshadowed in *Kansas City*, 244 S.W.2d at 114, wherein, amid a somewhat meandering rumination filled with luscious tidbits of dicta, the court said:

To the contrary, it could be contended with some force that it was the intention of the legislature to require a suspending bond by the petitioner for review to secure the payment of all damages caused by delay where the order involved is a rate *increase* order; and that the court will consider also, in determining the amount of the suspending bond, the excess charges to be paid only in the event the order is a *reduction* order.

We next examine the remainder of the subsections of § 386.520.

### Section 386.520.3

**Section 386.520.3** states:

In case any circuit court stays or suspends the order or decision of the commission lowering any rate, fare, toll, rental, charge or classification, upon the execution and approval of said suspending bond shall forthwith require the corporation, person or public utility affected, under penalty of the immediate enforcement of the order or decision of the commission, pending the review and notwithstanding the suspending order, to keep such accounts, verified by oath, as may, in the judgment of the court, suffice to show the amounts being

charged or received by such corporation, person or public utility, pending the review, in excess of the charges allowed by the order or decision of the commission, together with the names and addresses of the corporations and persons to whom overcharges will be refundable in case the charges made by the corporation, person or public utility, pending the review, be not sustained by the circuit court; provided, that street railroad corporations shall not be required to keep a record of the names and addresses of such persons paying such overcharge of fares, but such street railroad corporations shall give to such persons printed receipts showing such overcharges of fares, the form of such printed receipt to be approved by the commission.

The legislature clearly intended that subsection three of § 386.520 would apply only to rate decrease cases: the legislature provided in the introductory clause to that subsection, "In case any circuit court stays or suspends any order or decision of the Commission *lowering any rate. ...*"(emphasis supplied) "Where Congress includes particular language in once section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *USA v. Juvenile Male J.A.J.*, 134 F.3d 905, 908 (8 th Cir.1998). This is "powerful evidence" of the intent of the legislature. *Id.* We apply the same principle here. Since the legislature by express language limited subsection three to those cases in which there was a rate decrease order, and since the legislature did not place such a limitation on subsections two, four [3] and

five,[4] it is apparent that the legislature did not intend subsections two, four and five to apply only to rate increase orders. We next look to subsection 2 of § 386.520, under which the order complained of was entered, to determine whether its language limits its application to rate decrease orders such that it would not apply to the present case.

### Section 386.520.2

Section 386.520.2 states:

The circuit court, in case it stays or suspends the order or decision of the commission in any manner affecting rates, fares, tolls, rentals, charges or classifications, shall also by order direct the corporation, person or public utility to pay into court, from time to time, there to be impounded until the final decision of the case, or into some bank or trust company paying interest on deposits, under such conditions as the court may prescribe, all sums of money which it may collect from any corporation or person in excess of the sum such corporation or person would have been compelled to pay if the order or decision of the commission had not been stayed or suspended.

It begins with this language: "The circuit court, in case it stays or suspends the order or decision of the commission in any manner affecting rates...." This language refers back to and is a continuation of the language of subsection one, under which a stay or suspension of an order of the Commission may be had in both rate increase cases and rate decrease cases. When there is such a stay or suspension, § 386.520.2 provides that the circuit court

**3.** "The court may, from time to time, require said party petitioning for a review to give additional security on, or to increase, the said suspending bond, whenever in the opinion of the court the same may be necessary to secure the prompt payment of said damages or said overcharges."

**4.** "Upon the decision of the circuit court, all monies which the corporation, person or public utility may have collected pending the ap-

peal, in excess of those authorized by such decision, together with interest, in case the court ordered the deposit of such monies in a bank or trust company, shall be promptly paid to the corporations or persons entitled thereto, in such manner and through such methods of distribution as may be prescribed by the court, unless an appeal be granted such corporation, person or public utility, as herein provided."

"shall ... direct the corporation, person or public utility affected to pay into court ... all sums of money which it may collect from any corporation or person in excess of the sum such corporation or person would have been compelled to pay if the order or decision of the commission had not been stayed or suspended." Appellant argues that this latter language can only apply to rate decrease cases, because in a rate increase case, there would be no "sums of money which it may collect from any corporation or person in excess of the sum such corporation or person would have been compelled to pay if the order or decision of the commission had not been stayed or suspended."

Before we analyze § 386.520.2 in terms of whether it applies to rate decrease orders or rate increase orders, we examine the facts of the case before us in more detail. On November 26, 1997, the trial court issued its judgment determining that the Commission's Report and Order of January 22, 1997, was unlawful and unreasonable insofar as the rates were approved without a hearing on the rate design issues of class cost of service and revenue shifts, as required by law. In its "Order Granting Stay," dated the same day, the circuit court noted that Midwest had shown, and the Commission and MGE had admitted, that the portion of the Commission's Report and Order of January 22, 1997 establishing rates was issued without a hearing on the rate design issues of class cost of service and revenue shifts. The circuit court found that the revenue portion of the Commission's order would remain in effect, while the amount charged to individual customers, like the members of Midwest, was reversed and remanded. The court further found that, as a result of the Commission's act or omission, there appeared to be no valid or lawful order establishing the present rates of MGE.

The court further found that the last just reasonable and lawful rate was that rate level approved by the PSC in case No. GR–93–240. This 1993 rate was lower than the rate contained in the part of the order of the Commission that had just been reversed and remanded. The court then found that the Commission order relating to the annual increase, unless stayed, would require transportation customers (e.g., Midwest) to pay in amounts to MGE that exceeded the last just reasonable and lawful rate levels for such services. The circuit court then ordered MGE to pay into the registry of the court all moneys received by MGE from the LVS transportation class of customers (e.g., Midwest) which represents the difference between the rate level approved in 1993 and that approved by in the instant case.

Since the circuit court found the 1996 rate unlawful, the only lawful rate at which MGE could collect money from Midwest was the former, and lower, 1993 rate. If the order had not been stayed or suspended, but rather allowed to stand, then, since the order had been declared unlawful, the amounts Midwest would have been compelled to pay were the amounts due under the 1993 rates. And this would be so, even though the aggregate revenue due to MGE under the Commission's order was not reversed or remanded. Upon remand, the Commission will determine how much of that aggregate revenue due MGE would be paid by Midwest. By issuing the stay order, the circuit court was allowing MGE to collect revenue at the newer higher rate, pending the outcome of further hearings, on the condition that it impound the difference between that higher rate and the lower rate then lawfully in existence. If the circuit court had not issued this order, then MGE could collect revenue from Midwest only at the 1993 rate.

Hence, the facts of this case fit within the language of § 386.520.2, because the " ... circuit court ... [did] direct the ... utility affected to pay into court ... all sums of money which it may collect from [Midwest] in excess of the sum [Midwest] would have been compelled to pay if the order or decision of the commission had not been stayed...."

We hold, therefore, that under the record developed in this case, the circuit court, having followed the language of the statute, had subject matter jurisdiction to enter its order impounding funds, in this rate increase case, pursuant to § 386.520.2.

The judgment of the trial court is affirmed. The remainder of Appellant's claims are addressed in a memorandum to the parties pursuant to Rule 84.16(b).

All concur.