Mary Fern (Brewer) JANTZ, Petitioner–Appellant,

v.

James Allen BREWER, Respondent–Respondent.

No. 23218.

Missouri Court of Appeals, Southern District, Division One.

Oct. 31, 2000.

David G. Neal, Eminence, for appellant.

Roy E. Williams, Raymond E. Williams, Henry, Henry, Henry, Engelbrecht & Williams, P.C., West Plains, for respondents.

SHRUM, Judge.

This is a domestic relations case in which Mary Jantz ("Mother") and her ex-husband, James Brewer, ("Father") share joint physical and legal custody of their minor daughter ("Sara"). Soon after the parties' marriage was dissolved, Mother initiated a procedure pursuant to § 452.377, RSMo Cum.Supp.1998, to relocate Sara. Father opposed the relocation. Following an evidentiary hearing, the trial court sustained Father's motion opposing Mother's proposed relocation. Mother appeals. We affirm.[1]

Mother and Father's marriage was dissolved April 12, 1999. The dissolution judgment contained a detailed joint physical and legal custody plan for their only child, Sara, born November 20, 1989. Under the plan, Mother and Father shared physical custody of Sara on an approximately equal basis, even during weekdays. The parties alternated physical custody of Sara on weekends, with weekend defined as 4:00 p.m. each Friday to 6:00 p.m. Sunday. The judgment addressed multiple legal custody issues, including the requirement the parties cooperate and share information regarding Sara's school activities.

On May 31, 1999, Mother married Douglas Jantz. On July 1, 1999, Mother notified Father of her proposal to relocate her residence and that of Sara from Winona, Missouri, to Springfield, Missouri, a distance of approximately 120 miles. Mother's apparent intent was to comply with § 452.377, which provides, *inter alia:*

"2. Notice of a proposed relocation of the residence of the child, or any party entitled to custody or visitation of the child, shall be given in writing by certified mail ... to any party with custody or visitation rights.... The notice ... shall include the following information:

. . . .

1. When § 452.377 is cited herein, we refer to RSMo Cum.Supp.1998. All other statutory references are to RSMo 1994, except when otherwise noted.

"(4) A brief statement of the specific reasons for the proposed relocation of a child, if applicable; and

"(5) A proposal for a revised schedule of custody or visitation with the child, if applicable.

. . . .

"7. The residence of the child may be relocated sixty days after providing notice . . . unless a parent files a motion seeking an order to prevent the relocation. . . . Such motion shall be accompanied by an affidavit setting forth the specific factual basis supporting a prohibition of the relocation. The person seeking relocation shall file a response . . . and include a counter-affidavit setting forth the facts in support of the relocation as well as a proposed revised parenting plan for the child.

. . . .

"9. The party seeking to relocate shall have the burden of proving that the proposed relocation is made in good faith and is in the best interest of the child."

After Father received Mother's relocation notice, he moved for an order preventing the relocation. He also filed a § 452.410 motion to modify the custody provisions of the dissolution judgment. Mother filed the responses required by § 452.377.7 and answered Father's motion to modify.

The court held an evidentiary hearing regarding Mother's relocation request on September 1–2, 1999. Mother presented evidence that she was remarried and had a job in Springfield which provided her (1) steadier employment than at her factory job in Winona, (2) a chance to learn job skills other than factory work, and (3) increased benefits. Also, she and her present husband testified he could increase his employment earnings by moving to Springfield. Although Mother's evidence focused on improved family finances as the requisite proof that the move would be in Sara's best interests, she also adduced evidence that "several children's programs" existed in Springfield for Sara that were not offered in Winona.

Sara was questioned by the trial judge. In part, Sara testified that "from [her] point of view[,]" the joint custody had "worked out good." Regarding the proposed relocation to Springfield and changing her place of school attendance, Sara testified: "I want to go to school down here [Winona] and stay with my friends . . . and my family. And if I move up there, it just . . . doesn't happen."

When Mother rested her case, Father moved for a judgment on the theory that she had not met her burden of proof.[2] After a colloquy between the trial judge and respective lawyers that consumed seventy-four pages of the transcript, the judge announced his intention to enter judgment for Father. Thereon, Father dismissed his motion to modify the dissolution decree. In the judgment itself, the trial court found Mother "clearly established non-pretextual, good faith reasons for her move to Springfield," but had not met her burden of proving that relocation was in Sara's best interest. Mother's appeal followed.

■ Preliminarily, we address Father's contention that this appeal "is not properly before the Court and should be dismissed or stayed." The genesis of this argument is that after Mother filed her appeal with this court, Father filed a § 452.410.1 motion to modify the custody provisions of the dissolution decree. In part, Father seeks sole legal and sole physical custody of Sara in his modification case.

In urging dismissal of Mother's appeal, Father characterizes her appeal as an effort to get this court to "make a custody determination" and decide the "same is-

---

2. In pertinent part, Rule 73.01(a)(2) (1999) provides: "After the plaintiff has completed presentation of plaintiff's evidence, the defen-dant may move by motion for a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief."

sues currently ... pending" in the trial court. Continuing, Father argues that "[t]he trial Court's determination will engulf the issues raised here[ ]" and that Mother "is effectively requesting this Court to enter an advisory opinion on the application of the relocation statute in a situation involving joint legal and physical custody." We disagree.

A court can approve relocation per § 452.377 upon proof "that the proposed relocation is made in good faith and is in the best interest of the child." § 452.377.9. Proof of a substantial change in circumstances is not a precursor to approval of a proposed relocation under § 452.377. This is true though changes in physical custody and revisions of the parenting plan may be a necessary consequence of relocation of the child.

The required standard is different, however, for modifying a joint physical custody award under § 452.410.1. "Drastic modification of a joint physical custody decree requires evidence that will satisfy § 452.410.1." [3] *Babbitt v. Babbitt*, 15 S.W.3d 787, 791 (Mo.App.2000). "A change in circumstances ... is ... a precursor to a finding that the best interests of the child necessitate a modification of a prior custody decree based on the language of 452.410.1" *Guier v. Guier*, 918 S.W.2d 940, 947[5] (Mo.App.1996). The change of circumstances required by § 452 .410.1 must be in the circumstances of the child or the child's custodian. *Nichols v. Ralston*, 929 S.W.2d 302, 305[3] (Mo.App. 1996). However, when divorced parents have joint physical custody of a child, each parent is a custodian within the meaning of § 452.410.1. *Id.* at 305.

From the time of its initial enactment, Missouri's no-fault dissolution law has required proof of a change in circumstances of the child or child's custodian as a precursor to modification of a child custody decree, and there now exists a plethora of case law interpreting and applying the "change of circumstances" standard of § 452.410.[4] When the legislature enacts a law with terms or phrases that have prior judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action. *Citizens Elec. Corp. v. Dir. of Dept. of Revenue*, 766 S.W.2d 450, 452[4] (Mo.banc 1989). Moreover, the legislature is presumed to have intended what the law states directly, *Metro Auto Auction v. Dir. of Revenue*, 707 S.W.2d 397, 401[4] (Mo.banc 1986), and to act intentionally when it includes language in one section of a statute but omits it from another. *Midwest Gas User's v. Public Service Comm'n*, 996 S.W.2d 608, 616 (Mo.App. 1999). A disparate inclusion or exclusion of particular language in another section of the same act is "powerful evidence" of legislative intent. *Id.*

Applying these principles, we conclude that when the legislature did not include the "change of circumstances" requirement that appears in § 452.377, it meant what it said, i.e., that a parent, whether sole or joint custodian, need not prove a change in circumstances as part of the relocation procedure. Accordingly, we reject the notion advanced by Father that the same issues exist in the two cases. We deny Father's request to dismiss or stay Mother's appeal.

We turn now to Mother's single point relied on, which we reproduce despite its length.

---

3. In part, § 452.410 provides: "1. [T]he court shall not modify a prior custody decree unless ... it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child."

4. As originally enacted and made effective January 1, 1974, § 452 .410 RSMo Cum. Supp.1975 contained essentially the same "change of circumstances" language as found in the current version thereof.

"THE TRIAL JUDGE ERRED IN REFUSING [MOTHER'S] REQUEST, FILED IN COMPLIANCE WITH SECTION 452.377 RSMO SUPP.1998, TO MOVE THE PRINCIPAL RESIDENCE OF HER DAUGHTER FROM WINONA ... TO SPRINGFIELD ... BECAUSE HE ERRONEOUSLY DECLARED AND APPLIED THE LAW IN THAT *HE FOUND THAT STATUTE DID NOT APPLY TO [MOTHER'S] CASE BECAUSE SHE DID NOT POSSESS THE PRIMARY OR SOLE CUSTODY OF HER DAUGHTER* WHICH WOULD HAVE ALLOWED HER ALONE TO SELECT THE SCHOOL HER DAUGHTER WOULD ATTEND, BUT RATHER SHE SHARED THE JOINT LEGAL CUSTODY OF [SARA] WITH [FATHER] AND THUS COULD NOT CHANGE THE CHILD'S SCHOOL WITHOUT EITHER HIS CONSENT OR A SHOWING THAT THERE WOULD BE A SUBSTANTIAL ADVANTAGE IN DOING SO, SO THAT EVEN THOUGH THE JUDGE FOUND [MOTHER] WAS IN GOOD FAITH IN HER PROPOSAL TO RELOCATE AND THAT UNDER USUAL CIRCUMSTANCES THE INCREASE IN HER FINANCIAL RESOURCES OCCASIONED BY THE MOVE WOULD SATISFY THE 'BEST INTERESTS OF THE CHILD' REQUIREMENT SO THAT IF SHE HAD POSSESSED THE PRIMARY CUSTODY OF HER CHILD HER APPLICATION TO RELOCATE WOULD HAVE BEEN SUSTAINED, BUT THE THEN JUDGE ERRONEOUSLY CONCLUDED THAT BECAUSE SHE SHARES JOINT CUSTODY WITH [FATHER] AND YET DID NOT ATTEMPT TO PROVE A CHANGE IN SCHOOLS WOULD WORK TO A DISTINCT ADVANTAGE FOR HER CHILD THEN HER PROOF WAS DEFICIENT AND HER CASE SHOULD BE DISMISSED AT THE CONCLUSION OF HER EVIDENCE." (Emphasis added).

This point is a litany of complaints about alleged trial court findings, which according to Mother, were erroneous because the court misapplied or erroneously declared the law. However, in the argument part of Mother's brief it becomes clear that what she characterizes as trial court findings, for the most part, are nothing more than her interpretation of the trial judge's comments at trial. She cites the trial transcript thirty-seven times to support her claims that the trial judge misapplied and erroneously declared the law. On the other hand, Mother's brief only refers three times to findings in the actual judgment. Therein lies Mother's fatal mistake. She has unequivocally mischaracterized what the trial court found.

▮ In the judgment, the trial court declared that "[t]he new relocation statute, which applies not only to sole custodians but to joint custodians as well," applied to the case at bar.[5] This is in direct contradiction to what Mother claims in her brief. In Mother's point relied on and throughout her argument, she asserts the trial judge did not apply the relocation statute as evidenced by the trial judge's remarks at the motion hearing. Appellate courts typically disregard such oral statements made in ruling on an issue. *Matter of Fulton,* 863 S.W.2d 931, 933[2] (Mo.App.1993). Such statements are not part of the trial court's judgment and may be considered only as an explanation of the judgment. *Id.* A trial court's oral comments cannot "be used as a substitute for or to dispute" its record entry or judgment. *Bonadonna v. Bonadonna,* 322 S.W.2d 925, 927[3] (Mo. 1959); *Thornton v. Deaconess Medical*

---

**5.** In the judgment, the court's stated reason for sustaining Father's motion in opposition to relocation was that Mother did not present "a case for such a change," i.e., did not prove relocation was in Sara's best interests.

*Center–West,* 929 S.W.2d 872, 873 (Mo. App.1996).

Because Mother's claim of trial court error is premised on the assertion that the trial court "found the statute did not apply to [Mother's] case because she did not possess the primary or sole custody of [Sara]," we refrain from addressing the point. Such a premise mischaracterizes what the record shows. The trial court *did not* make that finding. To the contrary, the court specifically found that § 452.377 "applies not only to sole custodians but to joint custodians as well." By mischaracterizing the trial court's finding, Mother is essentially asking this court to convict the trial court of an error it did not commit. This we will not do. *Greene County v. Pennel,* 992 S.W.2d 258, 261 (Mo.App.1999); *Air Evac EMS, Inc. v. Goodman,* 883 S.W.2d 71, 74 (Mo.App. 1994).

 Under Supreme Court Rule 84.04(d), one necessary component of a point relied on is to identify the challenged ruling of the trial court. *Id.* Mother's argument claiming the motion court did not apply the relocation statute misstates the court's ruling. In effect, Mother asks that this court decide an abstract question that did not arise here. *Id.* Again, this is something we will not do. *Id.; In Re Marriage of DuBois,* 875 S.W.2d 223, 226[2] (Mo.App.1994). Given the state of this record, to decide this point as written would require us to render an advisory opinion which appellate courts do not undertake. *Id.* at 226[2].

 On appeal, the judgment of the trial court is presumed valid; consequently, the burden is on Mother to show it is incorrect. *Browning by Browning v. White,* 940 S.W.2d 914, 921[9] (Mo.App. 1997). Mother does not meet her burden by mischaracterizing the trial court's findings. It is not proper for this court to become an advocate for Mother and search

for a basis to challenge the trial court's judgment. *Id.* Point denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., concurs in separate opinion.

MONTGOMERY, J., concurs.

PARRISH, Presiding Judge, concurring.

I concur. I write separately solely to express dismay and concern with respect to the complexity Missouri trial judges face in resolving custody issues.

Missouri statutes applicable to child custody cases and appellate decisions applying those statutes have become excrutiatingly complex. Statutes include detailed "grocery lists" of factors trial courts are required to consider in determining custody. At the same time they mandate that custody be determined "in the best interest of the child." *See, e.g.,* § 452.375.[1] As the principal opinion illustrates, a proposed change of place of residence of the child or of "any party entitled to custody or visitation of the child" now requires detailed action by the party seeking to change his or her residence. § 452.377.

Each session of the legislature seems to produce additional requirements for litigants and attorneys involved in child custody cases, and the courts that hear those cases, to meet. Perhaps this seemingly never-ending complexity is why the courts of this state are witnessing ever growing domestic relations dockets.

It has been suggested that people involved in litigation perceive the judicial system as costing too much, taking too long and never ending. The myriad of domestic relations statutes directed to child custody issues does not alleviate that perception.

Trial judges apply the law as it is given to them. They apply the law to the particular facts of cases before them. They do

1. References to statutes are to RSMo Cum. Supp.1999.

this daily. In most areas of the law they do this without detailed directives outlining factors they are to consider.

Does the complexity of Missouri's detailed child custody statutes result in better decisions for children than would be rendered in a less complex legal environment? Would the needs of children and their families be equally well served (or perhaps better served) if detailed road maps of what judges were to consider were eliminated? Would the system better serve those who find their lives affected by it if child custody decisions were left to the sound judgment of trial judges without directives concerning what the exercise of sound judgment entails? Would the cost of litigation decline? Would many of those cases that seem to find themselves continually in and out of the system finally reach an end? Would cases such as this find solutions without requiring additional trials and additional appeals?

The trial of domestic relations cases, including child custody issues, is expensive. It has become increasingly time consuming. Are the many procedural details we impose on trials of domestic relations cases, generally, and child custody cases, specifically, necessary in order to reach just results, results that are in the best interests of children? I think not.