**McKNIGHT PLACE EXTENDED CARE, L.L.C., Appellant,**

v.

**MISSOURI HEALTH FACILITIES REVIEW COMMITTEE, Respondent.**

No. WD 63410.

Missouri Court of Appeals, Western District.

Sept. 7, 2004.

J. David Bechtold, Jefferson City, Kenneth J. Rothman, Clayton, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daryl R. Hylton, Asst. Atty. Gen., Jefferson City, for Respondent.

Before BRECKENRIDGE, P.J., and SMART and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Appellant McKnight Place Extended Care, L.L.C. ("McKnight") appeals from the circuit court's grant of summary judgment to respondent Missouri Health Facilities Review Committee ("the Committee"). McKnight argues two points on appeal. In Point I, McKnight argues the circuit court erred in entering summary judgment for the Committee because McKnight's proposal to add twelve beds to its facility falls within the exemption to the Missouri Certificate of Need Law created by section 197.305(10)(c) RSMo,[1] in that the provision specifically exempts from the definition of new institutional health services any capital expenditure below $600,000 by a skilled nursing facility.

In Point II, McKnight argues the circuit court erred in granting summary judgment to the Committee on the basis that McKnight must obtain a certificate of need for its proposal because the Committee's determination that a certificate of need is required for any bed increase of more than ten beds or ten percent of capacity was unreasonable, arbitrary, capricious, and an abuse of discretion in that prior decisions by the Committee have not required a certificate of need where a nursing facility requested an increase of more than ten beds or ten percent of capacity so long as the capital expenditure for that bed increase was less than $600,000.

As explained below, we hold that section 197.305(10)(e), and section 197.315.1 operate to provide that McKnight's proposed addition of twelve beds requires a certificate of need. Accordingly, the circuit court did not err in granting summary judgment to the Committee and we affirm its decision.

## Background

McKnight is a licensed 72–bed skilled nursing facility. The Committee is a state agency created by section 197.300 through 197.367. The Committee is the agency charged with administering the Missouri Certificate of Need Law. Unless otherwise provided, this law requires a person intending to offer a new institutional health service to obtain a certificate from the Committee certifying that the new service is needed. The Committee has established, by regulation, a mechanism by which a person may submit a Letter of Intent to request a Non–Applicability Certificate of Need Letter where the proposed project does not trigger the necessity for such a certificate.

---

1. All statutory references are to Revised Statutes of Missouri, 2000.

On February 28, 2003, McKnight filed with the Committee a Letter of Intent and a diagram of the facility in order to request a Non–Applicability Certificate of Need Letter for the expansion of the McKnight Place facility by six skilled nursing beds, thereby increasing the number of licensed beds at McKnight Place from 66 to 72. On March 5, 2003, the Committee, acting through its Chairman H. Bruce Nethington, issued a Non–Applicability Certificate of Need Letter to McKnight for the addition of six beds.

Also on February 28, 2003, McKnight filed a Letter of Intent and a proposed expenditure worksheet requesting a Non–Applicability Certificate of Need Letter for the expansion of the McKnight Place facility by twelve skilled nursing beds at a cost of $585,864. On March 6, 2003, the Committee, through a staff member, returned the Letter of Intent package for the non-reviewability request on the grounds that McKnight did not qualify to add any beds under the provisions of section 197.305(6)(a), and on March 14, 2003, further explained that the proposal exceeded the ten bed, ten percent provisions of section 197.305(10)(e).

McKnight requested that its request be placed before the Committee at its June 2, 2003 meeting. At its June 2, 2003 meeting, the Committee denied McKnight's request. This denial was the final administrative action regarding McKnight's Non–Applicability Certificate of Need Letter request for a twelve skilled nursing bed expansion.

McKnight's Petition for Review was timely filed in the Circuit Court of Cole County pursuant to section 536.150 as a review of a non-contested administrative case. In its petition, McKnight prayed for judgment declaring the Committee's denial of McKnight's request for a Non–Applicability Certificate of Need Letter was un-reasonable, arbitrary, capricious, and an abuse of discretion. McKnight also prayed for a judgment declaring McKnight could proceed to add twelve skilled nursing beds to its existing 72–bed facility at a cost of $585,864 without first obtaining a certificate of need from the Committee. In addition, McKnight prayed for an order commanding the Committee to issue a Non–Applicability Certificate of Need Letter for the expansion of its facility by twelve skilled nursing beds at a cost of $585,864.

McKnight then filed a motion for summary judgment. McKnight claimed it was entitled to summary judgment because: (1) The Committee's denial of McKnight's Non–Applicability Certificate of Need Letter request was unlawful under section 197.305(10)(a) and (c) in that the capital expenditure was less than $600,000; (2) The Committee's decision denying McKnight's Non–Applicability Certificate of Need Letter request was unreasonable, arbitrary, and an abuse of discretion; and (3) Section 197.305(10)(e) is not and cannot be construed as a limitation upon the exceptions granted by section 197.305(10)(a) and (c).

The Committee then filed a cross-motion for summary judgment. The Committee claimed it was entitled to summary judgment pursuant to section 197.305(10)(e), because McKnight's proposal exceeded both ten beds and ten percent of its total bed capacity and McKnight was required to obtain a certificate of need to proceed with its proposed development.

The circuit court entered summary judgment for the Committee on its motion and denied McKnight's motion. The circuit court found that McKnight's proposed development is a "new institutional health service" pursuant to section 197.305(10)(e) and that a Certificate of Need is therefore required pursuant to section 197.315.1. The circuit court rejected McKnight's ar-

gument that section 197.305(10)(e) implicitly includes a requirement that a project must exceed an "expenditure minimum" as defined in section 197.305(6)(a), because to read an "expenditure minimum" into section 197.305(10)(e) would negate its intent. It further found that McKnight's proposal exceeds both ten beds and ten percent of its total bed capacity, and, therefore, McKnight must obtain a certificate of need before proceeding with the proposed development. This appeal follows.

### Standard of Review

■ Section 536.150, governs judicial review of an agency's decision in a noncontested case. We review the trial court's decision, not the decision of the agency. *Cade v. State Dep't of Soc. Servs., Div. of Family Servs.*, 41 S.W.3d 31, 36 (Mo.App. W.D.2001).

Because the trial court granted summary judgment to the Committee, the standard of review for summary judgment applies in this case. "When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). The review of a summary judgment is essentially *de novo. Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the circuit court initially. *Id.* The propriety of summary judgment is purely an issue of law and an appellate court need not defer to the circuit court's order granting summary judgment. *Id.*

### I. Applicability of § 197.305(10)

■ In Point I, McKnight claims the circuit court erred in granting summary judgment to the Committee because McKnight's proposal to add twelve beds to its facility falls within the exemption to the Missouri Certificate of Need Law created by section 197.305(10)(c), in that the provision specifically exempts from the definition of new institutional health services any capital expenditure below $600,000 by a skilled nursing facility.

Section 197.315 provides, in pertinent part, that:

1. Any person who proposes to develop or offer a new institutional health service within the state must obtain a certificate of need from the committee prior to the time such services are offered.

Section 197.305(10) defines a "new institutional health service" as:

(a) The development of a new health care facility costing in excess of the applicable expenditure minimum;

(b) The acquisition, including acquisition by lease, of any health care facility, or major medical equipment costing in excess of the expenditure minimum;

(c) Any capital expenditure by or on behalf of a health care facility in excess of the expenditure minimum;

(d) Predevelopment activities as defined in [section 197.305(13)] costing in excess of one hundred fifty thousand dollars;

(e) Any change in licensed bed capacity of a health care facility which increases the total number of beds by more than ten or more than ten percent of total bed capacity, whichever is less, over a two year period;

(f) Health services, excluding home health services, which are offered in a health care facility and which were not offered on a regular basis in such health care facility within the twelve-month period prior to the time such services would be offered;

(g) A reallocation by an existing health care facility of licensed beds among major types of service or reallocation of licensed beds from one physical facility or site to another by more than ten beds or more than ten percent of total licensed bed capacity, whichever is less, over a two-year period;

Section 197.305(6) defines, in pertinent part, "expenditure minimum" as:

(a) For beds in existing or proposed health care facilities licensed pursuant to chapter 198, RSMo, and long-term care beds in a hospital as described in subdivision (3) of subsection 1 of section 198.012, RSMo, six hundred thousand dollars in the case of capital expenditures, or four hundred thousand dollars in the case of major medical equipment, provided, however, that prior to January 1, 2003, the expenditure minimum for beds in such a facility and long-term care beds in a hospital described in section 198.012, RSMo, shall be zero, subject to the provisions of subsection 7 of section 197.318;

McKnight argues that because the cost of its proposed development falls below the $600,000 expenditure minimum defined in section 197.305(6)(a), the proposed development does not require a certificate of need, pursuant to section 197.305(10)(c), in spite of the fact that the proposed development increases the total number of beds by more than ten and increases the total bed capacity by more than ten percent over a two-year period, implicating section 197.305(10)(e). Despite satisfying the criteria that require a certificate of need under section 197.305(10)(e), McKnight argues that because the proposed development does not satisfy the criteria to require a certificate of need under section 197.305(10)(c), that no certificate of need is required. McKnight argues that section 197.305(10)(e) is not and cannot be construed as a limitation upon the exception granted in section 197.305(10)(c).

McKnight ignores that section 197.305(10) is a list of "[n]ew institutional health service[s]" and attempts to re-characterize section 197.305(10) as a list of exemptions or exclusions from the definition of "[n]ew institutional health service[s]." McKnight distorts the nature of the list by contending that each subparagraph should be read as a separate basis for claiming an exemption from the definition of "[n]ew institutional health service[s]." McKnight also contends that if a project does not fit any one definition, it is not a new institutional health service even if it otherwise fits within one or more of the other definitions of new institutional health service.

This argument lacks merit. Section 197.305(10) is not a list of exclusions, but rather a list of new institutional health services. Section 197.305(10) creates seven separate definitions and an entity that meets any of the definitions is deemed a "[n]ew institutional health service" and requires a certificate of need.

"The cardinal rule of statutory construction is that the intention of the legislature in enacting the statute must be determined and the statute as a whole should be looked to in construing any part of it." *J.S. v. Beaird*, 28 S.W.3d 875, 876 (Mo. banc 2000). "Words are to be given their plain and ordinary meaning wherever possible." *Id.* "Each word or phrase in a statute must be given meaning if possible." *State v. Blocker*, 133 S.W.3d 502, 504 (Mo. banc.2004). "If the plain language of statute creates an ambiguity, the statute will be construed to avoid unreasonable or absurd results." *Id.*

The essence of the certificate of need program is the requirement that any proposed construction of or significant capital expenditure for health facilities

in a state be certified to be necessary by the State Agency before it is offered. The program is intended to reduce unnecessary duplication in health care facilities and thereby, it is hoped, reduce the cost of health care to consumers. *HCA Health Servs. of Midwest, Inc. v. Administrative Hearing Commission*, 702 S.W.2d 884, 885 (Mo.App. E.D.1985) (quoting *Greater St. Louis Health Sys. Agency v. Teasdale*, 506 F.Supp. 23, 28 (E.D.Mo. 1980)).

Given the intent of the certificate of need program to avoid unnecessary duplication of services, the seven definitions of new institutional health service in section 197.305(10) must be read disjunctively to be consistent with the legislature's intent. McKnight even admits that the seven definitions of new institutional health service in section 197.305(10) are disjunctive. If the definitions are to be read disjunctively, then under the plain meaning of the words of the statute, the exceptions to the definitions must be read conjunctively. When the exceptions to the definitions are read conjunctively and consistent with the legislature's intent, a new health service provided by a licensed nursing facility is a "new institutional health service" under section 197.305(10) and it requires a certificate of need unless none of the seven definitions are satisfied. If the exceptions to the definition of "new institutional health service" were read disjunctively, as McKnight argues, it would be inconsistent with the legislature's intent of avoiding unnecessary duplication of services.

McKnight argues that any new health service provided by a licensed nursing facility at a cost below the expenditure minimum defined in section 197.305(6)(a) does not require a certificate of need. However, monetary expenditures are not the only concern in the certificate of need program. *HCA Health Services*, 702 S.W.2d at 885,

provides that avoiding duplication of unnecessary services is the essence of the certificate of need program. Therefore, requiring a certificate of need for an increase of ten or more beds or a ten percent increase in beds is consistent with the purpose of avoiding unnecessary duplication of services. If, as McKnight argues, any expenditure on a health care service below the expenditure minimum defined in section 197.305(6) did not require a certificate of need, then section 197.305(10)(e), section 197.305(10)(f), and section 197.305(10)(g) would all be rendered meaningless. McKnight's argument effectively writes out three of the seven definitions of a "new institutional health service." To write out definitions expressly provided for in the statute would violate a principal rule of statutory construction that each word or phrase in a statute must be given meaning if possible. *Blocker*, 133 S.W.3d at 504.

McKnight incorrectly applies *Jantz v. Brewer*, 30 S.W.3d 915, 918 (Mo.App. S.D. 2000), which provides that "the legislature is presumed to have intended what the law states directly, and to act intentionally when it includes language in one section of a statute but omits it from another." (internal citations omitted). *Jantz* also provides that "[a] disparate inclusion or exclusion of particular language in another section of the same act is 'powerful evidence' of legislative intent." *Id.* McKnight uses this logic to argue that inclusion of the $600,000 minimum dollar amount in section 197.305(10)(c) and exclusion of the dollar amount from section 197.305(10)(e) shows an intent to not require a certificate of need if the cost of adding ten or more beds or increasing bed capacity by more than ten percent is below the $600,000 minimum. However, McKnight neglects to consider whether the disparate inclusion and exclusion of the dollar amounts in different paragraphs

of the same statute is evidence of legislative intent to require a certificate of need if either the increase exceeds the minimum dollar amount *or* exceeds the minimum bed number or percentage increase amount. This intent would be consistent with the intent of avoiding unnecessary duplication of health services by requiring a certificate for any substantial increase in health services, whether the increase is in terms of monetary expenditures or skilled nursing facility beds.

McKnight also incorrectly applies *Hovis v. Daves*, 14 S.W.3d 593, 596 (Mo.banc 2000), which provides that a statute should be construed in a manner to harmonize any potential conflict between two subsections. McKnight uses *Hovis* to argue that requirements of a certificate of need for the statutory minimum expenditure or bed amounts mean that a certificate of need is not required if the expansion is either below the minimum dollar amount *or* below the minimum bed amount. McKnight claims that this interpretation is required to harmonize conflict between two subsections. However, McKnight fails to recognize that the plain language of the statute requires a certificate of need at given dollar or bed amounts. This interpretation also harmonizes conflict by requiring a certificate under either condition.

Finally, McKnight incorrectly applies *Community Care Centers, Inc. v. Missouri Health Facilities Review Committee*, 735 S.W.2d 13, 14 (Mo.App. W.D.1987). McKnight argues that *Community Care Centers* construes the statute to not require a certificate of need where the capital expenditure is less than $600,000 or where the expansion is up to ten beds or ten percent regardless of cost so that the Committee would not be burdened with small increases in existing health care services. McKnight also argues that such a construction encourages health care providers to provide services efficiently and economically and to lessen their capital expenditures, which are the very purpose of the Certificate of Need Law. This argument lacks merit, because *Community Care Centers* explicitly states that "[t]he purpose of the certificate of need program is to reduce unnecessary duplication in health care facilities and to reduce the cost of health care." *Id.* at 14. McKnight incorrectly interprets *Community Care Centers* providing that the purpose of the certificate of need program is to reduce health care costs to mean that the providers should be encouraged to create new institutional health services at costs below the minimum expenditure level regardless of whether the service is needed. McKnight fails to consider that reducing the cost of health care also applies to recipients of health care as well as providers, and that duplication of unnecessary services at any cost ultimately increases the cost of health care to its recipients.

Therefore, McKnight's proposal to add twelve beds to its facility constitutes a new institutional health service requiring a certificate of need despite the fact that its capital expenditure is below $600,000.

Point I is denied.

## II. Prior Missouri Health Facilities Review Committee Decisions

■ In Point II, McKnight argues that the circuit court erred in granting summary judgment to the Committee because the Committee's determination that a certificate of need was required for McKnight's proposed development was unreasonable, arbitrary, capricious, and an abuse of discretion in that prior decisions by the Committee have not required a certificate of need where a nursing facility requested an increase of more than ten beds or ten percent of capacity so long as the capital expenditure for that bed in-

crease was less than $600,000. In support of this argument, McKnight cites several instances in 1992 where the Committee did not require a certificate of need for nursing facilities that requested an increase of more than ten beds or ten percent of capacity at a capital cost of less than $600,000. This argument lacks merit.

■■■■ An administrative agency is not bound by stare decisis, nor are agency decisions binding precedent on the Missouri courts. *State ex rel. AG Processing, Inc. v. Public Serv. Comm'n*, 120 S.W.3d 732, 736 (Mo.banc 2003). "Courts are not concerned with alleged inconsistency between current and prior decisions of an administrative agency so long as the action taken is not otherwise arbitrary or unreasonable." *Columbia v. Mo. State Bd. of Mediation*, 605 S.W.2d 192, 195 (Mo.App. W.D.1980). The mere fact that an administrative agency departs from a policy expressed in prior cases which it has decided is no ground alone for a reviewing court to reverse the decision. *Id.*

In this case, the fact that the Committee has previously not required a certificate of need for nursing facilities that requested an increase of more than ten beds or ten percent of capacity at a capital cost of less than $600,000 does not mandate that the Committee not require a certificate of need for McKnight's proposed development. The Committee's current decision to require McKnight to obtain a certificate of need for its proposed development is not arbitrary or unreasonable because requiring a certificate of need for need for nursing facilities that requested an increase of more than ten beds or ten percent of capacity is consistent with the statutory directives in section 197.305(10)(e). Although the Committee may have allowed proposed developments with capital expenditures below $600,000 but with an increase of more than ten beds or ten per-

cent of capacity to proceed in the past, the Committee's failure to repeat its past misconstruction of section 197.305(10)(e) does not render its current decision unreasonable, arbitrary or an abuse of discretion.

McKnight incorrectly applies *Rathjen v. Reorganized School District R–II*, 365 Mo. 518, 284 S.W.2d 516, 526 (1955), which provides that it is a well-established rule of construction that an interpretation of a statute by public officers charged with its execution is entitled to consideration. However, McKnight fails to recognize that *Rathjen* also provides that a public officer's interpretation of a statute is not controlling upon the courts. *Id.*

McKnight also incorrectly applies *Boone County v. County Employees' Retirement Fund*, 26 S.W.3d 257, 264 (Mo.App. W.D. 2000) (quoting *Foremost–McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo.banc 1972)), which provides that " '[t]he interpretation and construction of a statute by an agency charged with its administration is entitled to great weight.' " However, *Boone County* states that the courts must "give effect to the statute as written." *Id.* In this case, the statute as written requires nursing facilities requesting an increase of more than ten beds or ten percent of capacity to obtain a certificate of need.

Therefore, the circuit court did not err in granting summary judgment to the Committee because the Committee's determination that a certificate of need was required for McKnight's proposed development was not unreasonable, arbitrary, capricious, or an abuse of discretion despite prior decisions by the Committee that have not required a certificate of need where a nursing facility requested an increase of more than ten beds or ten percent of capacity at a capital cost of less than $600,000.

Point II is denied.

**236**

### Conclusion

For the foregoing reasons, the judgment of the circuit court is affirmed.

BRECKENRIDGE, P.J. and SMART, J., concur.