**AIR EVAC EMS, INC.,**
**Plaintiff–Appellant,**

v.

**Lynn GOODMAN, Defendant–Respondent.**

**No. 19233.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 5, 1994.

Jay B. Umansky, N. Gregory Beachem, Kramer & Frank, St. Louis, for plaintiff-appellant.

Christina L. Mell, L. Dwayne Hackworth, Piedmont, for defendant-respondent.

SHRUM, Judge.

This is an action on account brought by Air Evac EMS, Inc. for medical services provided by it to Lynn Goodman. Air Evac alleged Goodman owed $5,628.50 on the account. Following a bench trial, the trial court entered judgment for Air Evac for $1,268.00 plus interest. Air Evac appeals.

We affirm.

### FACTS

On February 5, 1992, Air Evac sent a helicopter from their Cape Girardeau base to Reynolds County Memorial Hospital. Once there, Air Evac's employees loaded Lynn Goodman onto the aircraft and transported him to Methodist Medical Center in Memphis, Tennessee. By this suit on account, Air Evac seeks to recover its charges for those services.

At trial, Goodman testified he was transferred against his will and he never requested to be transported by helicopter to another facility. Goodman's testimony in this regard includes the following. He testified that before Air Evac's personnel arrived, Goodman's physician (Dr. Raines) told him "that he was going to ship me out by helicopter" and "I told him I wasn't going." Goodman denied seeing Dr. Raines after that conversation. Following that exchange with his doctor, a nurse gave Goodman a shot. Still later, "two guys" from the helicopter crew came into his room, and Goodman "told them [he] wasn't going." The next he remembered, he was in Memphis in the hospital. At trial when asked why he "didn't ... want to ride in the helicopter," Goodman answered, "I was scared ... I didn't think there was that much wrong with me ... [a]nd I wasn't financially able to do it." On cross-examination when shown a "Transfer Consent Form" bearing what purported to be his signature, Goodman testified, "That's not my signature ... [I] never signed this."

The testimony of Rodger Huffman, flight nurse for Air Evac, included the following. He and other Air Evac employees arrived at the Reynolds County hospital at 11:26 p.m. and left at eight minutes after midnight. Upon first arriving, Huffman went to Goodman's bedside and at that point Goodman "did inform us that he did not wish to be transferred by air." Huffman then left Goodman's room and told Dr. Raines of Goodman's refusal. Dr. Raines went back into Goodman's room and remained for a few minutes. After Raines left Goodman's room, he told Huffman that Goodman was "agreeable to go."

Huffman reentered the room and began preparing Goodman for transportation. At that point Goodman did not further protest the transportation and Huffman started an examination of Goodman, the result of which he recorded in a document described as "Flight Nurses Report" (Exhibit 4). In that report, Huffman described Goodman as awake, alert, oriented, cooperative, and ambulatory. Huffman noted on his "trip sheet" that Goodman had received Demerol and Vistaril at 11:15 p.m., eleven minutes before Air Evac personnel arrived.

Huffman's testimony about the medications given Goodman included the following. He explained that relief from extreme pain was the purpose for Demerol and when a patient has such pain, Demerol will relieve the pain without the "strong side effect of drowsiness." However, a person not in pain who receives Demerol "becomes very drowsy." The Vistaril drug heightens the effects of Demerol and it and Demerol "acting together have some impact on a person's ability to think and motivate." Initial effect from the drugs normally occurs at 20 minutes and the peak "is about 30 to 40 minutes." Huffman testified that he first saw Goodman eleven minutes after the medications had been given and at that point was told by Goodman that he was not going. At that time Goodman was alert. Forty-two minutes later when Goodman was placed in the helicopter, Huffman said, the medications "would have been acting."

The judgment of the trial court, in pertinent part, reads as follows:

"The Court finds that there is insufficient evidence to show that Defendant, Lynn Goodman, signed an informed consent to be transported by Air Evac EMS, Inc. However, the Court further finds that Defendant, Lynn Goodman, received from Medicare eighty percent (80%) of One Thousand Five Hundred Eight-five [sic] Dollars ($1,585.00) or One Thousand Two Hundred Sixty-eight Dollars ($1,268.00).

"WHEREFORE, it is hereby ORDERED, ADJUDGED, and DECREED by the Court that judgment be entered for Plaintiff, Air Evac EMS, Inc., a Corporation, in the amount of One Thousand Two Hundred Sixty-eight Dollars ($1,268.00), plus interest at the rate of nine percent (9%) from February 11, 1992. Costs taxed to Defendant, Lynn Goodman."

Air Evac appeals from that judgment. Goodman does not appeal.

## STANDARD OF REVIEW

 Our review of a court-tried case is governed by Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Thus, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* at 32[1]. All fact issues without specific findings in the court's judgment "shall be considered as having been found in accordance with the result reached," Rule 73.01(a)(3), and its judgment should be affirmed if the result was correct on any tenable basis. *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 334[2] (Mo.App.1991).

## DISCUSSION AND DECISION

Air Evac's only theory of recovery is an action on account. Such an action is one at law to recover money for services performed or property sold and delivered. *Helmtec Industries, Inc. v. Motorcycle Stuff, Inc.*, 857 S.W.2d 334, 336[7] (Mo.App.1993). Because the action is based on a contract, a plaintiff's proof requires evidence that shows "an offer, an acceptance, and consideration between the parties as well as the correctness of the account and the reasonableness of the charges." *See Welsch Furnace Co., Inc. v. Vescovo*, 805 S.W.2d 727, 728[1] (Mo.App. 1991). "Such evidence consists of proof that: 1) Defendant requested plaintiff to furnish ... services; 2) plaintiff accepted the offer of the defendant by furnishing such ... services; and 3) the charges were reasonable." *Id.* at 728[2].

Here, Air Evac correctly points out that Goodman did not dispute that he received the service nor did he dispute the reasonableness of the charge. However, Goodman did dispute the first element, i.e., that he requested Air Evac to furnish the service.

Air Evac's only point reads:

"The trial court erred in entering judgment in favor of [Air Evac for] ... $1,268.00 ... [rather than $5,628.50] ... in that the trial court (A) misinterpreted the contract law of account ... by ruling that a signed informed consent is necessary for [Goodman] to be liable to [Air Evac] for air ambulance services rendered to [Goodman] by [Air Evac]; and (B) the trial court should have found that [Goodman's] doctor acted as [his] agent, acting within his authority and best medical judgment, and thus bound [Goodman] to pay to [Air Evac] the reasonable value of the services performed by [Air Evac]."

Thus stated, Air Evac's point has two prongs that we address separately.

As prong A is phrased, Air Evac appears to challenge the trial court's "informed consent" finding as a misapplication or erroneous declaration of the law. In contrast, in the argument portion of its brief, Air Evac correctly characterizes the trial court's statement as a "finding of fact."

To the extent that Air Evac's claim of trial court error is premised on the assertion that the trial court's "informed consent" finding was an erroneous declaration or application of the law, we refrain from addressing the point. Such a premise mischaracterizes what the record shows. Air Evac says in its point that the trial court ruled "that a signed informed consent is necessary for [Goodman]

to be liable to [Air Evac]." That, however, did not occur. The trial court's "informed consent" finding spoke to a single fact issue, i.e., whether there was sufficient evidence to show that Goodman "signed an informed consent."

Under Rule 84.04(d) one necessary component of a point relied on is a concise statement of the challenged ruling of the trial court. *In re Marriage of McCoy*, 818 S.W.2d 322, 325[2] (Mo.App.1991). Air Evac's argument in prong A—that the trial court ruled "that a signed informed consent is necessary for [Goodman] to be liable to [Air Evac]"— misstates the trial court's ruling. In effect, Air Evac asks that we decide an abstract question that did not arise here. *See State ex rel. Brokaw v. Board of Education*, 171 S.W.2d 75, 85[18] (Mo.App.1943). This we will not do. *See In Re Marriage of Dubois*, 875 S.W.2d 223, 226[2] (Mo.App.1994).

■ Appellate courts do not render advisory opinions or decide nonexistent issues. *Dubois*, 875 S.W.2d at 226. Given the state of the record, any opinion voiced by us about whether a "signed informed" request for service is required in an action on account would be merely advisory. It is for that reason that we refrain from doing so.

■ Treating prong A of Air Evac's point as a claim that the trial court erred in its fact finding regarding whether Goodman signed an "informed consent," we hold that it lacks merit. Goodman's testimony that the signature on the "Transfer Release Form" was not his and that he never signed the form was unequivocal and uncontradicted. The trial court was entitled to believe all, part, or none of Goodman's testimony. *See Dukes v. Dukes*, 859 S.W.2d 264, 268[4] (Mo.App.1993). On appeal we give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Estate of Moore*, 802 S.W.2d 192, 194[2] (Mo.App.1991). Goodman's denials provided substantial evidence to support the trial court's findings regarding the signing of the "informed consent."

In prong B of its point Air Evac says that "the trial court should have found that [Dr. Raines] acted as [Goodman's] agent, acting within his authority...." Air Evac appears to argue that, based on the record, the trial court was compelled to find that Dr. Raines was Goodman's agent and acted within the scope of his authority in requesting helicopter transport for Goodman. We disagree.

■ A party who relies upon the authority of an agent has the burden of proof regarding both the fact of the agency relationship and the scope of the agent's authority. *Houston v. Groth Enterprises, Inc.*, 670 S.W.2d 178, 180[1] (Mo.App.1984). In the absence of any conflicts in the evidence, the determination of what constitutes agency and whether there is evidence tending to prove the existence of agency is a question of law. *Lange Co. v. Cleaning by House Beautiful*, 793 S.W.2d 869, 871[1] (Mo.App.1990). However, where there is conflicting evidence or where reasonable persons might draw different conclusions from undisputed evidence regarding either the existence of the agency relationship or the authority of an agent, the issues are for the fact finder to determine. *Eyberg v. Shah*, 773 S.W.2d 887, 890[3] (Mo.App.1989); *Philp v. Minnesota Mutual Life Insurance Company*, 657 S.W.2d 679, 682[4] (Mo.App.1983). An agency will not be inferred merely because a third person assumed it existed. *Stenger v. Great Southern Sav. & Loan Ass'n*, 677 S.W.2d 376, 385[22] (Mo.App.1984).

■ Whether Dr. Raines was Goodman's agent with authority to obligate Goodman for the cost of being transferred to Memphis by helicopter was an issue upon which there was conflicting evidence. On the one hand, Goodman testified that he told Dr. Raines and "two guys" from Air Evac that he was "not going" on the helicopter and did not recall that he ever told them differently. Such testimony, if believed, is direct refutation of Air Evac's claim that Dr. Raines was expressly or impliedly authorized as Goodman's agent to obligate him for this service. On the other hand, Huffman testified that after Dr. Raines visited Goodman a second time— an encounter that Goodman disputed—he was told by Dr. Raines that Goodman was "agreeable to go." We again observe that the trial court was entitled to believe, all, part, or none of the testimony of both Goodman and Huffman. *Estate of Moore*, 802

S.W.2d at 194[2]. Contrary to Air Evac's argument, the evidence in this record does not compel a finding that Dr. Raines was Goodman's agent or was acting within the scope of his agency regarding the services rendered by Air Evac. Resolution of the agency issues were for the trial court and its findings in that regard are "considered as having been found in accordance with the result reached." Rule 73.01(a)(3).

Implicit in the trial court's refusal to award $5,628.50 (the amount of the account) is its finding that Goodman did not request the service, either personally or through an agent who had authority to do so, and, consequently, its implicit finding that Air Evac failed in proving its action on account. Such finding is not against the weight of the evidence. Point denied.[1]

Judgment affirmed.

PARRISH, C.J., and MONTGOMERY, J., concur.

---

1. Inasmuch as Goodman did not appeal from the judgment against him for $1,268, we need not speculate as to the theory embraced by the trial court in reaching that result or decide if the evidence supported its undisclosed theory for a judgment in that amount.