In the Matter of the CARE AND TREATMENT OF Kenneth K. BURGESS, Appellant,

v.

STATE of Missouri, Respondent.

No. 24443.

Missouri Court of Appeals, Southern District, Division One.

March 28, 2002.

Thomas D. Carver, Springfield, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen, Alana M. Barragan–Scott, Office of the Attorney General, Jefferson City, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

This appeal arises out of a proceeding instituted under Missouri's "Sexually Vio-

lent Predator" legislation, §§ 632.480–.513 (the "Act").[1] As allowed by § 632.486, RSMo Cum.Supp. (1998) the attorney general on March 2, 1999, filed a petition in the Probate Division of the Circuit Court of Greene County alleging Kenneth K. Burgess ("Burgess") "may meet the criteria of a sexually violent predator."

During the pendency of the case, Burgess filed a third-party petition naming the attorney general ("Nixon"), the director of the Missouri Department of Health ("Wilson") and the superintendent of the Southeast Missouri Mental Health Center ("Barton") as third-party defendants.[2] The petition alleged various civil rights violations under 42 U.S.C. § 1983. By an alternate motion, Burgess asked the court to add Nixon, Wilson, and Barton as plaintiffs in the action. On May 9, 2000, the trial court, by docket entry, struck Burgess's third-party petition and overruled his motion to add parties plaintiff. Burgess appealed that ruling to this court but we dismissed the appeal because the order appealed from was not a final order or judgment. *See In the Matter of the Care and Treatment of Burgess v. State,* 34 S.W.3d 430 (Mo.App.2000).

On June 25, 2001, Burgess filed a "Motion to Join Additional Parties … Pursuant to Rule 52.04, 52.06 and 52.08." By this, Burgess again asked that Nixon, Wilson, and Barton, or their successors, be joined as parties to the case. The trial court ruled this motion adversely to Burgess via a "Judgment and Order." The court found that joining Nixon, Wilson, and Barton as parties and adding Bur-

gess's claims under 42 U.S.C. § 1983 "would be unduly burdensome and likely to confuse jurors." The court then invoked Rule 74.01(b) by expressly declaring there was no just reason for delay and declaring the judgment final. This appeal followed. We affirm.

### DISCUSSION AND ANALYSIS

Before addressing Point I, we pause to consider a contention that first appears in the argument section of Burgess's brief beneath Point I. There, Burgess asserts that "[t]he essence of [his] complaint in this appeal is that the trial court should have allowed him to pursue his civil rights claims *either through a third-party petition* or by adding parties and pursuing his claims as counterclaims or cross-claims against the added parties." (Emphasis supplied.) However, the judgment from which Burgess appeals *does not* involve Burgess's failed effort to file a third-party petition per Rule 52.11.

After we dismissed Burgess's appeal, 34 S.W.3d 430, he did not refile or otherwise attempt to proceed with his third-party petition. Instead, he filed a pleading entitled "Motion to Add Parties and Declare Proceedings to be Adversarial." In that and subsequent filings, Burgess cited and relied on Rules 52.04, 52.06, and 52.08 in urging the trial court to enter an order adding Nixon, Wilson, and Barton. Burgess never reprised his effort to bring Nixon, Wilson, and Barton into the lawsuit via third-party practice and only mentions his third-party petition by reference, i.e., by explaining that the claims asserted in

1. All statutory references are to RSMo (2000) unless otherwise stated. All rule references are to Supreme Court Rules (2001) unless cited differently.

2. Specifically, Burgess's goal was to get Jeremiah W. (Jay) Nixon, Roy C. Wilson, M.D., and Don Barton, into the case in their repre-

sentative and official capacities. At the time, Burgess was confined in the mental health center mentioned above. When we refer to these persons as "Nixon," "Wilson," and "Barton," we intend no disrespect to them or their respective positions.

his rejected third-party petition are the claims Burgess would assert against Nixon, Wilson, and Barton in cross-claims or counterclaims if the trial court ordered them added as parties. Consequently, the trial court's judgment deals exclusively with Burgess's motion to add parties pursuant to Rules 52.04, 52.06, and 52.08. It does not address Burgess's earlier effort—which the trial court had rejected—to file a third-party petition pursuant to Rule 52.11.

When Burgess, in the argument section of his brief, asserts that the "essence of [his] complaint in this appeal is that the trial court should have allowed him to pursue his civil rights ... through a third party petition[,]" he is attempting to raise an issue for the first time on appeal that was not presented anew to the trial court after his failed appeal. Moreover, it is an issue that was neither addressed nor adjudicated in the trial court's judgment nor was it raised in the "points relied on" section of Burgess's brief. An issue raised for the first time on appeal and not presented to or decided by the trial court is not preserved for appellate review. *State ex rel. Nixon v. American Tobacco Co.*

*Inc.*, 34 S.W.3d 122, 129[11] (Mo.banc 2000); *Vaughn v. Willard*, 37 S.W.3d 413, 416[4] (Mo.App.2001). Moreover, appellate courts are only obliged to decide those issues raised in points relied on. *See In re Marriage of Thomas*, 21 S.W.3d 168, 173 n. 5[4] (Mo.App.2000). Issues that an appellant raises only in the argument part of his or her brief, as occurred here, are not preserved for appellate review. *Id.* Any claim by Burgess that the trial court should have allowed him to file the third-party petition has been abandoned.[3]

In the preserved part of his first point, Burgess maintains the court erred when it refused to join Nixon, Wilson, and Barton, in their representative capacities, as parties, because they or their successors are indispensable parties under Rule 52.04(a).[4] He argues that joining these persons as parties is mandated by Rule 52.04(a) because "complete relief cannot be accorded among those already parties." From this, we discern that Burgess's argument is hinged exclusively on subsection (1) of Rule 52.04(a) (*see* n. 4) and that he does not claim subsection (2) of Rule 52.04(a) as a basis for mandatory joinder of Nixon, Wilson, and Barton.[5]

---

3. Rule 52.11 provides "a defending party, as a third-party plaintiff, may cause a summons and petition to be served upon a person not a party to the action *who is or may be liable* to the defending party." (Emphasis supplied.) The plain language of this rule shows that Burgess's attempt to file a third-party petition is ill-conceived. "The test of the propriety of third-party impleader is 'whether the third party is liable as a guarantor, surety, insurer or indemnifier of the principal defendant.'" *State ex rel. Baldwin v. Gaertner*, 613 S.W.2d 638, 640 (Mo.banc 1981) (citation omitted). For Burgess to argue he can implead Nixon, Wilson, and Barton as third parties is frivolous as there is no conceivable basis for recovery by Burgess from those persons on theories of guaranty, surety, insurance, or indemnity.

4. In pertinent part, Rule 52.04(a) provides:

"(a) A person shall be joined in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or, (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party."

5. Even if Nixon, Wilson, and Barton, or any of them, arguably have an *"interest"* in this civil commitment case (within the meaning of Rule 52.04(a)(2)), their absence *as parties*, will

Burgess's claim of trial court error is based on the notion that complete relief cannot be accorded him on the claims referenced in his third-party petition unless Nixon, Wilson, and Barton are parties. As mentioned above, the third-party petition alleged Nixon, Wilson, and Barton, in their representative capacities, violated various constitutional rights of Burgess and sought monetary and injunctive relief under 42 U.S.C. § 1983. Both in the referenced pleading and now on appeal, Burgess claims that the sexual violent predator legislation is unconstitutional and the only way he can mount a meaningful "defense and press his claims against the State[ ]" is to have these persons in the suit as parties, thus enabling him to seek relief for the violation of his civil rights via counterclaims or cross-claims grounded on 42 U.S.C § 1983 principles.

 We pause at this point to note that the "purpose of 42 U.S.C. § 1983 is to deter or prevent persons with state authority from using that authority to deprive individuals of federally-guaranteed rights." *Knapp v. Junior College Dist. of St. Louis County, Mo.*, 879 S.W.2d 588, 591 (Mo.App.1994) (overruled on other grounds). Both state and federal courts are authorized to hear § 1983 cases. *Id.* at 591[4]. The elements of a § 1983 claim are that the conduct complained of (1) deprived the complaining individual of a right, privilege, or immunity guaranteed by the Constitution and laws of the United States, and (2) the conduct complained of was done by a person acting under the color of state law when the deprivation occurred. *Foremost Ins. Co. v. Public Service Comm'n. of Mo.*, 985 S.W.2d 793, 796[7] (Mo.App.1998).

With these principles in mind, we reproduce Burgess's initial argument on why he claims joinder of Nixon, Wilson, and Barton is mandated.

"The [sexual predator] law contains many features that may be constitutionally suspect. Among them is a provision that prohibits the State from funding an expert for a respondent even if he cannot afford to hire one. See Section 632.489.4, RSMo. Also suspicious is the general nature of the statute and the State's insistence that because it is a civil statute the principles of double jeopardy, ex post facto and the right against self incrimination do not apply to those being prosecuted under the statute.

"Burgess believes the refusal of the State to furnish him with an expert, along with the denial of other rights enumerated above is a violation of his constitutional rights and is fair game to litigate in this action. If Burgess is prohibited from including the proposed defendants, he will have no means by which to enforce his rights under the Constitution. Denying [Burgess] the

---

not, as a practical matter, impair or impede that interest, nor will such absence leave Burgess "subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest." First, Nixon brought this case for the State of Missouri pursuant to § 636.486, RSMo Cum. Supp. (1998). Under the circumstances, Nixon is able, as a practical matter, to protect his "interest" and that of Wilson, and Barton (if any they have) in getting Burgess confined. *See In re Estate of Remmele*, 853 S.W.2d 476, 482 (Mo.App.1993) (holding interests of non-joined parties adequately protected based on the doctrine of virtual representation). Second, the object of the commitment petition is to get Burgess confined. The absence of Nixon, Wilson, and Barton from the litigation *as parties* poses *no risk* to Burgess of double, multiple, or otherwise inconsistent confinement. Subparagraph (a)(2) of Rule 52.04 is not implicated, a fact that Burgess apparently recognizes as the argument part of his brief never advances a single reason why Rule 52.04(a)(2) is relevant.

right to seek injunctive relief and compensatory relief for violation of his constitutional rights would deprive him from mounting an effective defense. . . ."

■■■ First, Burgess's assertion that he is entitled to joinder of these persons because his civil rights were violated due to certain language in § 632.489.4, is nothing more than a hypothetical argument. Although § 632.489.4 provides that an alleged sexually violent predator who is detained after a probable cause hearing "may be examined by a consenting psychiatrist or psychologist of the person's choice *at the person's own expense* [,]" Burgess never asked the court to consider the constitutionality of this provision by seeking an evaluation at the State's expense. (Emphasis supplied.) On May 28, 1999, the trial court expressly noted in a docket entry, "The issue of appointment of an expert on behalf of [Burgess] is 'not' before the court because no motion filed for appointment of expert for respondent." Moreover, the legal file presented to this court does not include a motion by Burgess asking that the trial court order his evaluation by a mental health expert of his choosing at the State's expense. We are left to speculate on how the trial court would have ruled if Burgess had challenged the constitutionality of § 632.489.4 by filing such a motion. We will not convict the trial court of error for not joining Nixon, Wilson, and Barton to defend against a claim by Burgess based on his theoretical claim that § 632.489.4 was unconstitutional. Appellate courts do not render advisory opinions, *Air Evac EMS, Inc. v. Goodman,* 883 S.W.2d 71, 74[3] (Mo.App.1994), nor do we convict trial courts of error on issues never presented to them. *American Tobacco,* 34 S.W.3d at 129[11].

■■■ Second, the record refutes Burgess's argument that Nixon, Wilson, and Barton had to be joined as parties before he could mount "an effective defense or meaningfully prosecute his claims" based on his theory that the Act was unconstitutional. The record shows Burgess filed two motions with the trial court in March 1999 in which he advanced many of the same constitutional challenges to the Act that he later incorporated in his third-party petition and which he now argues to this court. Those motions, one titled "Motion For Immediate Release Or, In The Alternative, To Set Bail" and the other denominated "Motion to Dismiss," were ruled adversely to Burgess before the trial court entered the judgment from which Burgess now appeals. Accordingly, Burgess *has defended* on the ground that the Act violated rights guaranteed to him by the United States Constitution, but he lost that argument when the trial court ruled his motions adversely to him. Since Burgess's § 1983 allegations raised issues only about the constitutionality of the Act, Burgess did not have a § 1983 action to assert when, on July 9, 2001, the court adjudged that Nixon, Wilson, and Barton should not be joined as parties. This follows because the court's finding that the Act withstood all of Burgess's constitutional challenges foreclosed him from proving a necessary element of a § 1983 claim. "Section 1983 should be used only to remedy violations of Constitutional guarantees. . . ." *Knapp,* 879 S.W.2d at 591. Stated otherwise, the premise of Burgess's § 1983 claim was that the Act was constitutionally flawed. However, the trial court ruled the foundational premise against Burgess; consequently, he did not have a § 1983 claim that was even arguably viable in July 2001, nor will he (on this record) have an arguably viable § 1983 claim until he demonstrates that the trial court's rulings were incorrect. *See, e.g., Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Anderson v. Franklin*

*Co., Mo.,* 192 F.3d 1125 (8th Cir.1999) (holding an arrestee's § 1983 claims against law enforcement personnel for false arrest were properly dismissed without prejudice, where arrestee made no showing his conviction or sentence had been rendered invalid). Since Burgess has not demonstrated he had a viable § 1983 claim based on his assertions that the Act's provisions were constitutionally flawed, the trial court did not err when it denied his motions to add Nixon, Wilson, and Barton as parties.

▮ Third, Burgess argues that his "right to counsel demonstrates another example of the need to add parties." He points to a history of "great difficulty" in getting his attorney fees paid during the "preliminary phases of this action." Burgess suggests—without citation to the record to support his assertion—that "[t]he State's first line of defense was that the entity charged by the court with paying attorney fees was not a party." Because of this alleged history, Burgess maintains that "[t]he potential for future disputes for pay or other matters should be resolved by making the proposed defendants parties to this action." By such argument, Burgess is again seeking an advisory opinion. "Appellate courts do not render advisory opinions or decide nonexistent issues." *Air Evac,* 883 S.W.2d at 74[3]. Hypothetical situations are to be pretermitted until such questions actually arise. *Beets v. Tyler,* 365 Mo. 895, 290 S.W.2d 76, 82[16] (1956). Moreover, effective August 1999, the legislature mandated that the state public defender director provide legal services to any eligible person "[w]ho has been taken into custody pursuant to section 632.489[.]" § 600.042.4(4). If there once was an issue about who bore responsibility for paying Burgess's lawyer, that issue is moot. Except for issues of public importance or when a case becomes moot after submission and argument (exceptions not present here), issues that are moot are not subject to consideration on appeal. *Bratton v. Mitchell,* 979 S.W.2d 232, 235[5,7] (Mo. App.1998).

Considering the factual context revealed by this record, no reason appears to compel joinder of Nixon, Wilson, and Barton, in their representative capacities, as parties to this litigation. The trial court did not err when it entered judgment denying compulsory joinder. Point denied.

▮ Burgess's second point maintains the trial court erred by not ordering joinder of Nixon, Wilson, and Barton pursuant to Rules 52.04, 52.06, and 52.08 in that "permissive joinder" of these parties "would have allowed Burgess to litigate his civil rights claims against them, which arise out of common facts and occurrences, and would have promoted judicial economy, avoided multiple lawsuits and expedited resolution of Burgess' claims." The argument beneath Point II of Burgess's brief, includes the following: "For many of the reasons expressed previously, Burgess' motion to join additional parties is proper through Civil Rule 52.05 on permissive joinder."

Again, Burgess is attempting to raise an issue on appeal that was never placed before or ruled upon by the trial judge, namely, permissive joinder of Nixon, Wilson, and Barton as parties pursuant to Rule 52.05. Burgess did not ask the trial court to add these persons as parties per Rule 52.05; consequently, the trial court never addressed or ruled that issue. Burgess is essentially asking this court to convict the trial court of an error it did not commit. This we will not do. *Jantz v. Brewer,* 30 S.W.3d 915, 920 (Mo.App.2000). Given the state of the record, to decide the question Burgess tries to raise under this point would require this court to render an advisory opinion which appellate courts do not undertake. *Id.* at 929[11]. Point II is denied.

In Point III, Burgess alleges the trial court erred when it overruled his motion to join additional parties "because the doctrines of res judicata as expressed through claim preclusion and collateral estoppel-issue preclusion-would prohibit an independent or subsequent cause of action." However, Burgess never presented this issue to the trial court, nor did he seek a ruling based on this issue from the court. This alleged error is not preserved for our review. *See, e.g., American Tobacco,* 34 S.W.3d at 129[11]; *Vaughn,* 37 S.W.3d at 416[4].

Moreover, when Burgess posits to this court that denial of his motion to add parties precludes a subsequent § 1983 action, he raises nothing more than a hypothetical issue. This follows because res judicata "operates as a bar to the reassertion of a *cause of action* that has been previously adjudicated in a proceeding between the same parties or those in privity with them." *Robin Farms, Inc. v. Beeler,* 991 S.W.2d 182, 185[2] (Mo.App.1999) (emphasis supplied). Burgess misconceives res judicata principles when he argues that trying this case to conclusion would preclude a § 1983 suit against Nixon, Wilson, and Barton for alleged violation by them of his civil rights. For reasons stated in our analysis of Point I, a final judgment here, as the case is presently structured, will not adjudicate any cause of action Burgess has based on 42 U.S.C. § 1983 violations.

As to collateral estoppel, it acts to preclude "a party from litigating an issue which that party or its privy has previously litigated and *lost.*" *Ryan v. Ford,* 16 S.W.3d 644, 648[3] (Mo.App.2000) (emphasis supplied). Here, we do not know if Burgess will ultimately lose the issue on the constitutionality of the statute. The trial court could be asked to reconsider its previous rulings and find the Act unconstitutional, or an appellate court might ultimately rule the issue favorably to Burgess.

Finally, both res judicata and collateral estoppel are affirmative defenses and operate as such only after a final judgment has been rendered. *See e.g., Lomax v. Sewell,* 50 S.W.3d 804, 808[10] (Mo.App.2001); *Ryan,* 16 S.W.3d at 648[4]; *Robin Farms,* 991 S.W.2d at 185[4]. At this juncture, this court does not know if the constitutionality of the Act will be decided by a final judgment here, nor can we predict if the affirmative defenses would be raised in a subsequent action. By urging this court to rule that Nixon, Wilson, and Barton must be added as parties to prevent them from ultimately raising claim preclusion as a defense, Burgess is simply seeking an advisory opinion that appellate courts will not provide. *Air Evac,* 883 S.W.2d at 74[3]. Burgess advances nothing more than a hypothetical situation that we will not decide until such issue arises. *Beets,* 290 S.W.2d at 82[16]. Point denied.

The judgment of the trial court is affirmed.

MONTGOMERY, J., and BARNEY, C.J., concur.